**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Ronald C. Grumbkow,                          )
                                             )
        Plaintiff                         )
                                             )
        v.                                )     C.A. No. 06-489 (JJF)
                                             )
The Walt Disney Company,                     )
George J. Mitchell,                          )
Chairman of the Board &                      )
Robert A. Iger,                              )
President/Chief Executive Officer            )
& Jeffrey Ruthizer,                          )
Vice-President/ABC Group                     )

**APPENDIX OF UNPUBLISHED AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

POTTER ANDERSON & CORROON LLP

By: _Suzanne M. Hill_____
     Robert K. Payson (#274)
     Suzanne M. Hill (#4414)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE 19899
     (302) 984-6000

Dated: September 11, 2006          *Attorneys for Defendants*

## INDEX

**DESCRIPTION**                                                              **TAB**

*Brathwaite v. Holman,*
   2006 WL 1995137 (D. Del. July 17, 2006) ............................................................................... A

*Kopicko v. Dept. of Svcs. for Children, Youth and Their Families,*
   2004 WL 1837903 (D. Del. Aug. 13, 2004) ............................................................................. B

*M&M Techs. v. Furtler Chems., Inc.,*
   2005 WL 293509 (D. Del. Feb. 8, 2005) ...................................................................... ............ C

*Sene v. MBNA America, Inc.,*
   2005 WL 2304181 (D. Del. Sept. 20, 2005) ............................................................................. D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Suzanne M. Hill, hereby certify that on September 11, 2006, the attached documents were electronically filed with the United States District Court for the District of Delaware via CM/ECF (official Court electronic filing system) and two (2) true and correct copies were mailed via First Class Mail, Postage Prepaid to the following:

Ronald C. Grumbkow
32 Steeplechase Drive
Doylestown Hunt Estates
Doylestown, PA 18901

Robert K. Payson (#274)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
kshannon@potteranderson.com
shill@potteranderson.com

749676/30599

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Ronald C. Grumbkow,                         )
                                            )
              Plaintiff                     )
                                            )
       v.                                   )    C.A. No. 06-489 (JJF)
                                            )
The Walt Disney Company,                    )
George J. Mitchell,                         )
Chairman of the Board &                     )
Robert A. Iger,                             )
President/Chief Executive Officer           )
& Jeffrey Ruthizer,                         )
Vice-President/ABC Group                    )

## APPENDIX OF UNPUBLISHED AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

POTTER ANDERSON & CORROON LLP

By: _Suzanne M. Hill_

Robert K. Payson (#274)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000

Dated: September 11, 2006                   *Attorneys for Defendants*

## INDEX

**DESCRIPTION**                                                          **TAB**

*Brathwaite v. Holman*,
   2006 WL 1995137 (D. Del. July 17, 2006) ........................................................................... A

*Kopicko v. Dept. of Svcs. for Children, Youth and Their Families*,
   2004 WL 1837903 (D. Del. Aug. 13, 2004) ........................................................................... B

*M&M Techs. v. Furtler Chems., Inc.*,
   2005 WL 293509 (D. Del. Feb. 8, 2005) ......................................................... .........C

*Sene v. MBNA America, Inc.*,
   2005 WL 2304181 (D. Del. Sept. 20, 2005) ........................................................................... D

# EXHIBIT A

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1995137 (D Del.)
(Cite as: Slip Copy)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Kevin BRATHWAITE, Plaintiff,
v.
David K. HOLMAN, Anthony J. Rendina, Cathy Malay,
Larry Savage, Marcello Rispoli, Robert Wallace, Matt
Stevenson, Stephanie Carpenter, Barbi Thomas, Edwin Nk-
wopara, Lise Merson, and Valerie Dunn, Defendants.
No. CIV A. 04-1542(GMS).

July 17, 2006.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 The plaintiff, Kevin Brathwaite ("Brathwaite"), is
presently incarcerated at the Delaware Correctional Center
(the "DCC"), which is located in Smyrna, Delaware On
December 22, 2004, Brathwaite filed this *pro se* civil rights
action pursuant to 42 U.S.C. § 1983 The complaint alleges
that Major David Holman ("Holman"), Anthony Rendina
("Rendina"), Cathy Malay ("Malay"), Lieutenant Larry Sav-
age ("Savage"), Lieutenant Marcello Rispoli ("Rispoli"),
Sergeant Robert Wallace ("Wallace"), Sergeant Matt
Stevenson ("Stevenson"), Sergeant Stephanie Carpenter
("Carpenter"), Sergeant Bambi Thomas ("Thomas"), correc-
tional officer Edwin Nkwopara ("Nkwopara"), and correc-
tional officer Lise Merson ("Merson"), (collectively, the
"defendants") violated Brathwaite's Eighth and Fourteenth
Amendment rights On March 21, 2005, prior to serving any
of the defendants, Brathwaite filed an amended complaint
naming additional defendants and alleging further violations
of his constitutional rights pursuant to 42 U.S.C. § 1983.
However, the court subsequently dismissed the claims
against the newly added defendants, as well as Brathwaite's
additional claims of constitutional violations FN1

> FN1. On March 29, 2006, the court issued a
> Memorandum and Order (D.I 63) dismissing
> Brathwaite's claims with prejudice against the fol-
> lowing defendants: Thomas Carroll, Betty Burris,

David Pierce, Charles Cunningham, Lieutenant
Godwin, V. Dunn, and Don Overmeyer. V Dunn
was later added back to the case as a defendant
pursuant to an amendment to the complaint which
the court permitted as part of its March 29, 2006
Order On April 3, 2006 the court granted a motion
to dismiss (D.I 65) filed by Brathwaite. As a result
Bob Harris, Dr. Raman, Nurse Kera, William Yo-
der, David Phillips, Sergeant Lovett, Amy Whittle,
and First Correctional Medical were dismissed
without prejudice Thus, the only defendants re-
maining in the present case are: Holman, Rendina,
Malay, Savage, Rispoli, Wallace, Stevenson, Car-
penter, Thomas, Nkwopara, and Merson, and Dunn.

Presently before the court are: (1) the defendants' Motion to
Dismiss the allegations of the complaint against Carpenter,
Nkwopara, Stevenson, Thomas, and Wallace pursuant to
Federal Rule of Civil Procedure 12(b)(6) (D.I.58); and (2)
the defendants' Motion to Dismiss/Summary Judgment with
respect to Holman, Malay, Merson, Rendina, Rispoli, and
Savage, pursuant to Federal Rules of Civil Procedure
12(b)(6) and 56(c) (D.I.69) For the reasons that follow, the
court will grant the motion to dismiss with respect to the §
1985(2) conspiracy claim against the defendants Nkwopara,
Stevenson, Thomas, and Wallace. The court will also grant
the motion to dismiss with respect to the excessive force
claim as to the defendant Rispoli, but deny the motion as to
the defendants' Carpenter, Stevenson, and Wallace. In addi-
tion, the court will grant the defendants' motion for sum-
mary judgment with respect to defendants Holman, Malay,
Merson, Rendina, and Savage. The court will also permit
Brathwaite to amend his complaint consistent with its dis-
cussion below.

II. BACKGROUND

The complaint first alleges that, on October 9, 2004, at ap-
proximately 9:00 a.m., several sergeants, including Car-
penter, Stevenson, and Wallace, physically assaulted Brath-
waite with a dangerous weapon, and with their hands and
feet. (D.I. 2 Statement of Claims, at 1.) According to Brath-
waite, after the assault he informed Thomas and another of-
ficer that he was feeling suicidal. Brathwaite alleges that his
warnings went unacknowledged. (*Id.*)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1995137 (D.Del.)
**(Cite as: Slip Copy)**

Brathwaite next alleges that Rispoli and several other officers assaulted him on October 22, 2004. (*Id.*) The complaint does not contain much information concerning the assault by Rispoli, but does allege that Brathwaite filed grievances regarding the assault.

**\*2** Brathwaite further alleges that Nkwopara, Stevenson, Thomas, and Wallace conspired to file false reports and obstruct justice by "conspiring to cover up a crime [*i.e.* the October 9, 2004 assault]." (*Id.*) Brathwaite next claims that he filed grievances regarding the aforementioned assaults, but the grievance officer, Merson, "continuously gave fictitious reasons why [he] was not allowed to file grievances," thereby violating his constitutional rights. (*Id.* at 2.) He also alleges that he was denied due process when Merson allegedly refused to delegate his grievances. (*Id.*)

Additionally, Brathwaite alleges that he was given a disciplinary report and brought up on false charges. (*Id.*) According to the complaint, when Brathwaite's hearing officers refused to investigate the matter, he appealed the determination to Rendina. (*Id.*) Brathwaite claims that Rendina denied the appeal without an investigation, and without questioning witnesses to the incident. (*Id.*) He also claims that Rendina failed to provide him with a written answer to his appeal and, when he requested a copy, he received a letter from Malay, with a "falsified Appeal decision" attached, stating that his appeal was denied. (*Id.*)

Finally, Brathwaite alleges that Holman denied him due process when he neglected to conduct a follow-up investigation to the grievance forwarded to him regarding the October 9, 2004 alleged assault. Brathwaite states that Holman never questioned him on this matter, and he was not asked to name any witnesses to the incident. (D.I. 2 Affidavit, at 3.) Brathwaite has attached an affidavit to his complaint, which further details his claims.

On March 21, 2005, Brathwaite filed an amended complaint. (D.I. 9.) On March 29, 2006, the court dismissed all additional claims alleged in Brathwaite's amended complaint.

### III. STANDARD OF REVIEW

### A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 183 (3d Cir.1993). Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988). In performing this task, however, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir.1997). On the other hand, a court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

**\*3** Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quoting *Conley,* 355 U.S. at 45-46).

Finally, the Third Circuit has held that a district court may not dismiss a complaint with prejudice, and must permit amendment, where a plaintiff can remedy the complaint by an amendment, unless the amendment would be inequitable, futile, or untimely. *See Alston v. Parker,* 363 F.3d 229, 235-36 (3d Cir.2004).

### B. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                                      Page 3
Slip Copy, 2006 WL 1995137 (D.Del.)
**(Cite as: Slip Copy)**

to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed.Cir.2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *(Id.* at 247-48.) An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *(Id.* at 249.) The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, "the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant." *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1371 (Fed.Cir.2004) (citing *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed.Cir.2002).

### IV. DISCUSSION

#### A. Sovereign Immunity

Brathwaite's complaint seeks to hold the defendants liable in both their official and individual capacities. The defendants contend that they are entitled to Eleventh Amendment immunity for claims brought against them in their official capacities. The defendants, as officials of the DCC, are state officials acting under color of state law. *See Cespedes v. Coughlin*, 956 F.Supp. 454, 465 (S.D.N.Y.1997). A suit against a state agency or state official in his or her official capacity is treated as a suit against the state. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is so because neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). While a state is normally entitled to sovereign immunity, Congress may have abrogated the state's immunity through a valid exercise of its power, or the state itself may have waived its immunity. *See Lavia v. Commonwealth of Pennsylvania*, 224 F.3d 190, 195 (3d Cir.2000).

\*4 Neither of the two above-mentioned sovereign immunity exceptions are relevant here. First, the state has not waived

its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam*, 488 F.Supp. 775, 780 (D.Del.1980) (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *See Lavia*, 224 F.3d at 195. Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh Amendment sovereign immunity. *See Ospina v. Dept. of Corr.*, 749 F.Supp. 572, 579 (D.Del.1990). Therefore, Delaware has not clearly waived its immunity.

Finally, Congress has not abrogated the states' immunity for claims under Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Since Delaware's immunity has not been waived or abrogated, the court will dismiss Brathwaite's claims against the defendants in their official capacities.

#### B. Individual Liability under 42 U.S.C. § 1983

Brathwaite's complaint also seeks to hold the defendants liable in their individual capacities. In order to recover against the defendants individually, Brathwaite must show that he was deprived of a constitutional right by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48-54 (1988). As previously mentioned, the defendants, as prison officials of the DCC, are state officials acting under the color of state law. Thus, the only issue remaining for the court to determine is whether the defendants deprived Brathwaite of any constitutional right. The defendants contend that the court should either dismiss Brathwaite's claims against them because he has not alleged sufficient facts to state a claim, or grant them summary judgment because no genuine issues of material fact exist with respect to his claims. The court will first address the motion to dismiss, and then turn to the motion for summary judgment.

#### 1. Motion to Dismiss

##### a. Brathwaite's Conspiracy Claim Against Nkwopara, Stevenson, Thomas, and Wallace

Brathwaite claims that Nkwopara, Stevenson, Thomas, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                      Page 4
Slip Copy, 2006 WL 1995137 (D. Del.)
**(Cite as: Slip Copy)**

Wallace conspired to deprive him of his civil rights in viola-
tion of 42 U.S.C. § 1985(2). [FN2] Specifically, he alleges
that, Nkwopara, Stevenson, Thomas, and Wallace conspired
to file false reports and obstruct justice by "conspiring to
cover up [the alleged assault against him on October 9,
2004]."

> FN2. It is not clear to the court from the face of
> Brathwaite's complaint whether he is attempting to
> state a claim under Section 1985(2) or (3).
> However, the language used in the complaint sug-
> gests that Brathwaite is attempting to state a claim
> under Section 1985(2). In any event, Brathwaite's
> claim would fail whether the court analyzes it un-
> der Section 1985(2) or (3), because it does not
> meet the statutory requirements of either section.

In order to state a claim under 42 U.S.C. § 1985(2), which
provides a cause of action against persons who conspire to
obstruct justice, Brathwaite must allege that:
two or more persons ... conspired to deter, by force, intimid-
ation, or threat, any party or witness in any court of the
United States from attending such court, or from testifying
to any matter pending therein, freely, fully, and truthfully,
or to injure such party or witness in his person or property
on account of his having so attended or testified ...; or two
or more persons conspired for the purpose of impeding,
hindering, obstructing, or defeating, in any manner, the due
course of justice in any State or Territory, with intent to
deny to any citizen the equal protection of the laws, or to in-
jure him or his property for lawfully enforcing, or attempt-
ing to enforce, the right of any person, or class of persons,
to the equal protection of the laws.

**\*5** 42 U.S.C. § 1985(2). The two categories in which a
cause of action under Section 1985(2) will lie are "(1) when
there has been obstruction of justice, including, for instance,
intimidating or injuring witness, and (2) when there has
been a conspiracy for the purpose of impeding the due
course of justice in any state or territory." Altieri v. Penn.
State Police, No. Civ. A. 98-CV-5495, 2000 WL 427272, at
\*16 (E.D.Pa. Apr. 19, 2000) (citing Messa v. Allstate Ins.
Co., 897 F.Supp. 876, 881 (E.D.Pa.1995)) Brathwaite's
complaint fails to state upon which category of Section
1985(2) he bases his claim. However, an analysis under

either category demonstrates that Brathwaite's Section
1985(2) claim must fail.

Turning to the first category of Section 1985(2), Brathwaite
has not alleged that there was any obstruction of justice in-
volving a witness or prospective witness in a federal court
proceeding. Indeed, his complaint alleges only that Nkwo-
para, Stevenson, Thomas, and Wallace conspired to cover
up a "crime," i.e. the alleged assault against him on October
9, 2004. (Id.) With respect to the second category of Section
1985(2), Brathwaite has not alleged any facts to support a
claim that a conspiracy existed to obstruct justice in a man-
ner that would deprive him of equal protection of the law.
See Altieri, 2000 WL 427272, at \*16. That is, although
Brathwaite broadly alleges a conspiracy in his complaint, he
has failed to allege specific facts that reveal the existence of
a conspiracy against him by Nkwopara, Stevenson, Thomas,
or Wallace. Thus, the court will dismiss this claim.

### b. Brathwaite's Excessive Force Claim Against Carpenter, Stevenson, and Wallace

Brathwaite's complaint alleges that Carpenter, Stevenson,
and Wallace assaulted him with weapons, and with their
hands and feet. (D.I. 2 Statement of Claims, at 1.) Brath-
waite claims that on October 9, 2004, Wallace entered his
cell to conduct a strip search and, when he requested that a
Lieutenant be present, Wallace replied that "[he wasn't]
playing any f* * *ing games with him." (D.I. 2 Affidavit, at
1.) Wallace then sprayed him in the face with mace and left
his cell. (Id.) Brathwaite further alleges that, for no apparent
reason, Wallace returned to his cell and proceeded to spray
mace in his face, and over his entire body. (Id.) Brathwaite
also claims that, after Wallace emptied the can of mace into
his cell, he called Stevenson over, opened the cell door, and
told him to turn around to be handcuffed. (Id.) After com-
plying, Brathwaite claims that he was pushed to the floor
and that, while he was laying there, Stevenson and Wallace
"proceeded to kick, punch, and stomp on [him]," causing
broken ribs, loosened teeth, scratches, bruises and swollen
body parts. (Id.) According to Brathwaite, as a result of the
incident, he attempted to commit suicide. (Id.) Brathwaite
claims that when the officers, including Carpenter, saw him
"hanging from the ceiling" they did not come to his aid.
(Id.) Instead, Carpenter entered his cell and "sprayed [him]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 5
Slip Copy, 2006 WL 1995137 (D.Del.)
(Cite as: Slip Copy)

in the face with mace." (*Id.*)

**\*6** The defendants assert that the court should dismiss Brathwaite's claims against them because the complaint fails to include any allegation sufficient to sustain an Eighth Amendment claim under 42 U.S.C. § 1983. According to the motion, Brathwaite cannot establish that the force used by Carpenter, Stevenson, and Wallace was maliciously applied to cause him harm. (D.I. 59 ¶ 10.) Stevenson and Wallace claim that Brathwaite "continually refused orders to permit officers to conduct a strip search." (*Id.* ¶ 11.) The motion further contends that Carpenter, Stevenson, and Wallace "used minor force appropriate for the situation." (*Id.* ¶¶ 12, 16.) Lastly, these defendants contend that Brathwaite did not demonstrate an injury of sufficient severity to establish an Eighth Amendment claim. (*Id.* ¶ 13.)

When analyzing an excessive force claim under the Eighth Amendment, the court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (citations omitted). In making its determination, the court will have to decide whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll,* 390 F.Supp.2d 415, 419 (D.Del.2005) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).

Here, although the defendants contend that the force used by Carpenter, Stevenson, and Wallace was not maliciously applied, the court cannot agree. Brathwaite's complaint alleges that, while laying on the floor with his arms handcuffed behind his back, Stevenson and Wallace kicked, punched, and stomped on him for no apparent reason, and without provocation. In addition, he claims that instead of coming to his aid when he needed help, Carpenter sprayed him in the face with mace. Given these allegations, the court concludes that Brathwaite's complaint alleges a set of facts that, if proven true, could entitle him to relief.

Furthermore, the court cannot agree with the defendants' contention that Brathwaite's injuries were minor. Brathwaite claims that the blows directed at him, caused bruises, swelling, loosened teeth, and cracked ribs. In the court's view, the allegations concerning Brathwaite's injuries clearly fall within the purview of the Eighth Amendment. Thus, given the nature of these averments, there is no basis for dismissal of this § 1983 claim. *See Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992).

Additionally, "in a motion to dismiss the court is limited to the facts contained and alleged in the complaint and may not consider facts raised for the first time by parties in legal briefs." *Brandt v. Aunach,* No.05 Civ.A.2070DRD, 2005 WL 3077922 at \*2 (D.N.J. Nov. 14, 2005). In other words, at this stage of the proceedings, the court will not accept the information contained in the documents attached to the defendants' motion to dismiss, because it is bound to accept Brathwaite's alleged facts as true and view them in the light most favorable to him. "The question the court must answer is not whether [Brathwaite] will prevail, but rather whether there are any circumstances that would entitle him to relief." *Id.* Therefore, although Carpenter, Stevenson, and Wallace may have a valid defense to Brathwaite's excessive force claims, at this time the court will not consider the additional facts raised by the defendants in an effort to establish that defense.

c. Brathwaite's Excessive Force Claim Against Rispoli

**\*7** Brathwaite's complaint alleges that on October 22, 2004, Rispoli entered his cell and physically assaulted him. (D.I. 2 Affidavit, at 3.) According to Brathwaite, after being handcuffed, Rispoli along with three other unidentified officers entered his cell in order to conduct a search. (*Id.*) Brathwaite further claims that Rispoli "[struck him] in the face with [his] forearms and [struck his] body with punches and knees." (*Id.*) Brathwaite also alleges that Rispoli verbally assaulted him during the course of the alleged physical assault. (*Id.*) Brathwaite, however, does not allege that he was injured as a result of this alleged assault.

The Prison Litigation Reform Act ("PLRA") requires that an inmate suffer a physical injury before bringing a civil rights claim. 42 U.S.C. § 1997e(e). The PLRA provides that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                 Page 6
Slip Copy, 2006 WL 1995137 (D. Del.)
**(Cite as: Slip Copy)**

"[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injuries suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit has held, however, that section 1997e(e)'s physical injury requirement applies only to claims for compensatory damages, because "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir.2003) (quoting Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir.2000)). Further, section 1997e(e) does not apply to claims seeking injunctive or declaratory relief. Mitchell, 318 F.3d at 533-34. Thus, section 1997e(e)' s "physical injury" requirement will not effect any nominal, punitive, or injunctive relief that a plaintiff has requested in his complaint.

Turning to Brathwaite's complaint, he requests both compensatory and punitive damages. (D.I. 2 Affidavit. at 5.) With respect to Brathwaite's request for compensatory damages, the court concludes that his complaint does not allege any physical injury and, therefore, does not state a claim. Unlike the purported assault on October 9, 2004, Brathwaite makes no claim of injury arising out of the October 22, 2004 incident. However, the court will grant Brathwaite leave to amend his complaint, if he chooses.

In spite of the dearth of allegation regarding physical injury, as held in Mitchell. 42 U.S.C. § 1997e(e) does not bar Brathwaite's request for punitive damages. Therefore, at this juncture, Brathwaite's claim for punitive damages to vindicate his constitutional rights will stand.

### 2. Summary Judgment

#### a. Brathwaite's Deprivation of Due Process Claim Against Merson, Rendina, and Savage

Brathwaite's complaint alleges that Merson continuously gave fictitious reasons why he could not file grievances. He further claims that he was denied due process because Merson refused to delegate his grievances to the appropriate officials. (D.I. 2 Statement of Claims, at 2.) Brathwaite's complaint does not contain any other allegations with respect to

Merson. The complaint, however, does allege additional due process claims against Savage and Rendina. Specifically, Brathwaite avers that, after the alleged assault on October 9, 2004, he was given a disciplinary report and brought up on false charges regarding the incident. (Id.) Brathwaite next claims that Savage denied him due process because he "neglected to provide 24 hour notice of the grievance hearing" regarding the October 9, 2004 encounter. (Id.) He also contends that Savage "denied him a right to a full statement" relating to the incident, and "refused to conduct an investigation into [the alleged assault], even though he heard people talking about how the charges were false." (Id.) In addition, Brathwaite contends that Rendina violated his right to due process because he denied Brathwaite's grievance appeal regarding the alleged assault without an investigation into the incident. According to Brathwaite, Rendina neglected to provide a written answer to his grievance appeal, thereby violating his constitutional rights. (Id.)

\*8 In response, Merson, Rendina, and Savage contend that Brathwaite's claims against them should fail because his constitutional rights were not violated. That is, these defendants assert that Brathwaite does not "have a constitutionally protected right to the prison grievance procedure." (D.I. 68, at 12 ¶ 1.) They further argue that Brathwaite cannot demonstrate that his access to the courts has been compromised by their behavior. (Id.) The court agrees with the defendants.

A plaintiff bringing a § 1983 suit based on a violation of the due process clause must allege and prove five things: (1) that he was deprived of a protected liberty or property interest; (2) that his deprivation was without due process; (3) that the defendants subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process. Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir.1989). Here, Brathwaite cannot prove the first element necessary to sustain a § 1983 claim based on a violation of the due process clause, because the Third Circuit has held that, a violation of a prison grievance procedure is not tantamount to a deprivation of a protected liberty or property interest. See Burnside v. Moser, 138 Fed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                                    Page 7
Slip Copy, 2006 WL 1995137 (D Del.)
**(Cite as: Slip Copy)**

App'x 414, 416 (3d. Cir.2005) (not precedential) (citing _Flick v. Alba,_ 932 F.2d 728, 729 (8th Cir.1991)). "A prisoner's constitutional right to petition the government for redress of grievances is the right of access to the courts, which is not compromised by the prison's refusal to entertain a grievance." _Hoover v. Watson,_ 886 F.Supp.410, 419 (D.Del.1995).

Even if Brathwaite's claim that Merson continually invented reasons for not filing his grievances is true, this did not prevent him from accessing the courts. Furthermore, the bases for Brathwaite's § 1983 claim as to these defendants are Savage's alleged failure to provide him a grievance hearing, and Rendina's failure to investigate his grievance before denying it. As such, these are claimed violations of the prison grievance procedure, which are not sustainable under § 1983. Accordingly, no genuine issues of material fact exist with respect to these claims. Summary judgment, therefore, is appropriate as to Merson, Rendina, and Savage.

b. Brathwaite's Deprivation of Due Process Claim Against
Holman and Malay

Finally, Brathwaite alleges that Holman and Malay denied him due process when they neglected to properly address his grievance with respect to the alleged assault on October 9, 2004. Specifically, Brathwaite alleges that Malay wrote a letter stating that his appeal was denied and attached a falsified appeal decision. (D.I. 2 Statement of Claims, at 2.) Brathwaite further contends that Holman ignored the grievance "forwarded to [him] for a follow up investigation" and neglected to ask him "to give a statement [or] to give the names of witnesses." (_Id_ , at 5.) The defendants contend that Brathwaite does not allege how Malay or Holman were personally involved with any alleged constitutional violations. Moreover, they contend that Brathwaite "does not describe when, where, how or whether Holman had knowledge of, acquiesced in, or was even remotely responsible for an assault on him." (D.I. 68, at 5.) With respect to Malay, they argue that "Brathwaite's complaint is completely devoid of any cognizable § 1983 claim." (D.I. 68, at 14.)

**\*9** The Third Circuit has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the opera-

tion of respondeat superior." _Rode v. Dellarciprete,_ 845 F.2d 1195, 1207 (3d Cir.1988); _see Monell v. Dep't of Soc. Servs.,_ 436 U.S. 658 (1978). In other words, a plaintiff must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover. _Rode,_ 845 F.2d at 1207. A plaintiff establishes a causal connection by showing that the defendants were personally involved in the alleged wrongs through allegations of either personal direction or actual knowledge and acquiescence. _Id_ . Finally, a plaintiff must allege personal involvement with particularity, stating the time, place, and persons responsible for the violations. _See Boykins v. Ambridge Area Sch. Dist.,_ 621 F.2d 75, 80 (3d Cir.1980).

Viewing the allegations of Brathwaite's complaint in a light most favorable to him, and in the context of the applicable law, the court concludes that he has not provided any evidence that Holman or Malay were involved in, had personal knowledge of, or in any way acquiesced to any deprivation of his constitutional rights. As stated in her affidavit to the memorandum filed in support of the motion for summary judgment, Malay's official duty was merely to enter the data on the appeal documentation; she did not have decision making power in the hearing process. (D.I. 68, Ex. K ¶ 2.) Additionally, Brathwaite has failed to show with any particularity that Malay believed the appeal documentation may have contained false information. With respect to Holman, Brathwaite has alleged only the supervisory functions of a security superintendent. As previously discussed, however, a § 1983 defendant cannot be held liable under a respondeat superior theory. _See Fagan v. City of Vineland,_ 22 F.3d 1283, 1291 (3d Cir.1994). Moreover, the mere existence of grievances is not enough to impute knowledge to the defendants, Holman and Malay. _Rode,_ 845 F.2d at 1208 (noting that if the filing of a grievance was enough to impute liability to a government official, it would permit personal liability in most cases). Because Brathwaite cannot demonstrate any personal involvement by Holman or Malay, summary judgment in favor of these defendants is appropriate. [FN3]

> FN3. Even if respondeat superior did not bar Brathwaite's claims against Holman and Malay, the court would still grant the summary judgment motion be-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                          Page 8
Slip Copy, 2006 WL 1995137 (D Del.)
**(Cite as: Slip Copy)**

cause Brathwaite's claims against them concern the
prison grievance system and policies, which are not
actionable under <u>Section 1983</u>. *See <u>Burnside, 138
Fed. App'x at 416</u>* (citation omitted) (noting that, in
the Third Circuit, inmates "do not have a constitu-
tionally protected right to the grievance process.")

### *ORDER*

For the reasons stated in the court's Memorandum of this
same date, IT IS HEREBY ORDERED that:

1. State Defendants Carpenter, Nkwopara, Stevenson,
Thomas, and Wallace's Motion to Dismiss (D.I.58) is
GRANTED in part and DENIED in part.

2. The plaintiff's conspiracy claim against Nkwopara,
Stevenson, Thomas and Wallace shall be DISMISSED with
prejudice.

3. State Defendants' Motion to Dismiss/Motion for Sum-
mary Judgment (D.I.69) is GRANTED in part and DENIED
in part.

4. The plaintiff's claims against Holman, Rendina, Malay,
Savage, and Merson shall be dismissed with prejudice.

**\*10** 5. The plaintiff shall be permitted to amend the com-
plaint as directed in the court's Memorandum. The amended
complaint shall be filed within fifteen (15) days from the
date of this Order.

D.Del.,2006.
Brathwaite v. Holman
Slip Copy, 2006 WL 1995137 (D.Del.)

Briefs and Other Related Documents <u>(Back to top)</u>

• <u>1:04cv01542</u> (Docket) (Dec. 22, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 1837903 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

H. Diana KOPICKO, Plaintiff,

v.

DEPARTMENT OF SERVICES FOR CHILDREN,

YOUTH AND THEIR FAMILIES, Defendant.

No. Civ.A. 03-1172-KAJ.

Aug. 13, 2004.

H. Diana Kopicko, for Plaintiff. Frederica, DE, pro se

Ilona M. Kirshon, Wilmington, DE, for Defendant

*MEMORANDUM ORDER*

JORDAN, J.

## I. INTRODUCTION

*1 Before me are several motions filed by the plaintiff, H. Diana Kopicko, and a motion to dismiss (Docket Item ["D.I."] 12) filed by the defendant, the State of Delaware's Division of Services for Children, Youth and Their Families ("DSCYF" or the "State"). The plaintiff's motions consist of two motions for leave to amend the complaint (D.I.3, 9) and three motions for appointment of counsel (D.I.16, 21, 27) FN1 For the reasons that follow, the plaintiff's motions are denied, and the defendant's motion is granted

> FN1. The plaintiff also filed a motion for an extension of time to file a brief in response to the State's motion to dismiss (D.I.20), which was in effect granted. The plaintiff filed her answering brief (D.I.23) on July 30, 2004.

## II. BACKGROUND

The plaintiff has experience working as a rape counselor and as a social worker with a background in crisis intervention and interviewing victims of sexual abuse. (See D.I. 23 at 1.) She was hired by the State in May of 1997 as a "Casual Seasonal Senior Family Services Specialist" (*Id* at 4.) Later, in July of 1997, the plaintiff was hired as a full-time merit employee of DSCYF. (*Id* at 5.) Apparently there

was a probationary period at the outset of the employment relationship. (See D.I. 13 at ¶ 10.) Within that probationary period, on December 31, 1997, the State terminated her employment. (See D.I. 23 at 6.)

In her complaint the plaintiff alleges she was "fired because she questioned her supervisor's decisions that left children at risk." (D.I.1) Since her firing, the plaintiff has vigorously pursued a claim for wrongful termination through the State's administrative agency and court systems As related by the defendant in its motion to dismiss,

[The plaintiff] presented her case before the State Merit Employee Relations Board, ("MERB") which held two days of hearings, taking testimony from six witnesses and admitting 32 documents into evidence. The MERB upheld DSCYF's action in terminating plaintiff's employment, finding that the reasons for the termination of plaintiff during her probationary employment were all merit as opposed to non-merit factors and that they formed a reasonable basis for the determination that the performance during the probationary period had been unsatisfactory. (MERB Decision attached as part of Exhibit B.) Plaintiff appealed the MERB decision to the Superior Court, where President Judge Ridgely upheld the MERB Decision on the basis of the well-developed record below, finding no error of law and that there was substantial evidence on the record to support the Board's conclusion that plaintiff was not terminated for impermissible non-merit factors. *Kopicko v. Delaware Dept. of Services for Children, 2003 WL 21976409 (Del.Super.2003).* That decision was appealed to the Delaware Supreme Court, which likewise affirmed the MERB decision, indicating that after "having carefully considered the parties' briefs and the record below, we conclude that the MERB's decision is supported by substantial evidence and is free from legal error." *Kopicko v. State Dept. of Services for Children, Youth and their Families, 2004 WL 691901 (Unpublished Decision)* (Del.2004)

*2 (D.I. 13 at ¶ 10.)

Plaintiff also sued DSCYF in the Delaware Superior Court, challenging her dismissal as a breach of the implied covenant of good faith and fair dealing. *See Kopicko v. Delaware.* No. 521, 2000 (Del. May 28, 2004) (Attached to D.I. 14; referred to herein as "Supreme Court Order"). The Superior

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1837903 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Court granted summary judgment to the defendant, holding that sovereign immunity barred the plaintiff's claims *Kopicko v. DSCYF.* 200 WL 33108936 (Del.Super.) The Supreme Court stayed proceedings in the appeal to allow the plaintiff an opportunity to exhaust her administrative remedies, *Kopicko v. DSCYF,* 805 A.2d 877 (Del.2002), which she did as outlined above. The Supreme Court later dismissed that appeal on the basis of collateral estoppel and lack of subject matter jurisdiction of the suit originally in the Superior Court. (*See* Supreme Court Order at ¶ 5.)

Plaintiff evidently decided to open yet another litigation front against the defendant by filing the present action in December of 2003, alleging essentially the same dissatisfaction with the DSCYF's decision to terminate her, but couching it in the language of a claim under the "U.S. Whistle Blower Protection Act". Defendant has also filed two motions for leave to amend her complaint (D.I.3, 9), in which she alters certain of her allegations about "discriminatory practice" and about the relief she seeks, but she continues to base her claim upon the "U.S. Whistle Blower Protection Act".

After some fits and starts with the service of the complaint, the State filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (D.I.12) The motion cites a variety of reasons for dismissing the action, including lack of subject matter jurisdiction, the statute of limitations, insufficiency of service of process, Eleventh Amendment immunity, sovereign immunity, and collateral estoppel and *res judicata.* The defendant's motion and supporting memorandum of points and authorities was filed on May 13. No response was forthcoming from the plaintiff until I issued an order on July 15, 2004 stating that the plaintiff would have to file an answering brief on or before July 30, 2004, or otherwise show cause why the case should not be dismissed for failure to prosecute. (D.I.15.) Five days later, the plaintiff filed a motion for appointment of counsel (D.I.16) which is opposed by the State (D.I.18).[FN2] In addition, however, the plaintiff has filed an answering brief to the motion to dismiss filed by the State (D.I.23). Thus, I presently have before me the plaintiff's motion for appointment of counsel and the defendant's motion to dismiss.

FN2. As previously noted, *supra* at 1, the plaintiff

has filed two additional motions seeking the same relief. (D.I.21, 27.)

### III. STANDARDS

The State has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A challenge under Rule 12(b)(1) to subject matter jurisdiction in a case requires the court to ask "whether the complaint alleges facts on its face which, if taken as true, would be sufficient to invoke the district court's jurisdiction." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). Under Rule 12(b)(6), a motion to dismiss a complaint for failure to state a claim can only be granted if, "taking the allegations of the complaint as true, and liberally giving the plaintiff the benefit of all inferences that may be drawn therefrom, it appears beyond doubt that the plaintiff can prove no set of facts upon which relief could be granted." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 175 (3d Cir.1988). The moving parties bear the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991); *Locklear v. Remington,* 2003 WL 21003722 at *1 (D.Del.2003). However, "[t]he pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." ' *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 340 (2d ed.1990)). The Court need not "accept legal conclusions either alleged or inferred from the pleaded facts." *Id.* (quoting *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979)).

### IV. DISCUSSION

**\*3** The State aptly notes that the plaintiff has nowhere identified the jurisdictional basis for her complaint. She cites what she calls the "U.S. Whistle Blower Protection Act", but gives no statutory reference. The only statute that appears to fit what the plaintiff is trying to get at is the Whistle-Blower Protection Act of 1989, Pub.L. 101-12 (codified at various sections of Title 5 of the United State Code). However, that statute does not cover state employees. Rather, it is designed to protect federal employees. *See* 5 U.S.C. § 2105 (defining "an employee" for purposes of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1837903 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

Title 5 as including people in federal civil service, or someone subject to the supervision of a federal civil servant, or someone "engaged in the performance of a Federal function" under a law or Executive act). Indeed, in passing that act, Congress noted that it wanted to "strengthen and improve protection for the rights of Federal employees ..." *See* Public Law 101-12, April 10, 1989, 103 Stat 16 (set forth in note to 5 U.S.C. § 1201). I am thus compelled to conclude that, as the State contends, the complaint contains no basis for this court to exercise jurisdiction in this matter. The amendments the plaintiff seeks to make to her complaint do not correct the jurisdictional defect in any respect and are therefore immaterial to that conclusion. The complaint must therefore be dismissed, and the motions to amend the complaint and for appointment of counsel must be denied as moot.[FN3]

> FN3. Because I conclude that the challenge to subject matter jurisdiction is dispositive, I need not address the remaining arguments for dismissal advanced by the defendant

### V. CONCLUSION

Accordingly, it is hereby ORDERED that the defendant's motion to dismiss (D.I.12) is GRANTED, and the plaintiff's motions to amend the complaint (D.I.3, 9) and for appointment of counsel (D.I.16, 21, 27) are DENIED as moot.

D.Del.,2004.
Kopicko v. Department of Services for Children, Youth and Their Families
Not Reported in F.Supp.2d, 2004 WL 1837903 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV01172 (Docket) (Dec. 30, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
M & M TECHNOLOGIES, INC., Plaintiff,
v.
GURTLER CHEMICALS, INC., Defendant/Third-Party
Plaintiff,
v.
BURLINGTON CHEMICAL CO., INC., Third-Party De-
fendant.
**No. Civ.A. 03-994 GMS.**

Feb. 8, 2005.

George Pazuniak, Gerard M. O'Rourke, Connolly, Bove,
Lodge & Hutz, Wilmington, DE, for Plaintiff and Counter-
Defendant.
William J. Wade, Steven J. Fineman, Richards, Layton &
Finger, Rex A. Donnelly, IV, Ratner & Prestia, Wilmington,
DE, Kevin W. Goldstein, Stradley Ronon Stevens & Young,
LLP, for Defendant, Third-Party Plaintiff and Counter-
Claimant.

*MEMORANDUM*
SLEET, J.

### I. INTRODUCTION

**\*1** On October 30, 2003, the plaintiff, M & M Technolo-
gies, Inc. ("M & M"), filed this patent infringement action
against Gurtler Chemicals, Inc. ("Gurtler"). Presently before
the court is a motion to dismiss for lack of personal jurisdic-
tion filed by third-party defendant Burlington Chemical
Company, Inc. ("Burlington"). For the following reasons,
the court will grant the motion.

### II. BACKGROUND

The patent-in-suit, U.S. Patent No. 6,159,548 (the " '548
patent"), allegedly is owned by M & M. The patented inven-
tion is a method for oilproofing and waterproofing previ-
ously manufactured fabric with an aerosol spray containing
a diluted fluoroacrylate emulsion. The complaint alleges
that Gurtler has infringed, induced infringement of, or con-
tributorily infringed the method claims of the '548 patent.

On July 12, 2004, Gurtler filed a motion to file a second
amended answer, counterclaim, and third-party complaint.
The court granted Gurtler's motion on September 22, 2004.
Gurtler named Burlington as a third-party defendant and
brought claims against Burlington for negligent misrepres-
entation and violation of the Uniform Commercial Code,
Section 2-312, i.e. breach of warranty. The third-party com-
plaint alleges in Count I that: (1) Gurtler makes its allegedly
infringing product merely by adding water to Burcopel
CAT, a product sold to it by Burlington; (2) at the time Bur-
lington began selling Burcopel CAT to Gurtler, Burlington
orally represented and warranted that Gurtler's use of the
product would not infringe, induce infringement of, or con-
tributorily infringe the '548 patent; and (3) Burlington
breached its warranty against infringement. Count II alleges
that: (1) Burlington's representation that Burcopel CAT was
not infringing was a false representation of fact; (2) Burling-
ton made the false representation because of its lack of reas-
onable care in ascertaining the facts; (3) Burlington made
the false representation with an intention to induce Gurtler
to act; (4) Gurtler justifiably relied on the false representa-
tion; and (5) Burlington's actions caused Gurtler to incur
damages.

Burlington is a North Carolina corporation, with no place of
business in Delaware. It neither owns nor leases any prop-
erty in Delaware. Burlington is not registered with the Sec-
retary of State to do business in Delaware. It maintains no
office, local telephone listing, or bank accounts in Delaware,
and similarly, has no employees in Delaware. It has not paid
taxes or franchise fees in Delaware. Burlington has never
commenced any legal action or proceeding in the State of
Delaware and has never been named as defendant in any ac-
tion in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the
sale of Burcopel CAT, a chemical that adheres to fabric
causing it to become water resistant. Pursuant to the terms
of the Memorandum of Sale, the product was shipped col-
lect to Gurtler in South Holland, Illinois.[FN1] After receiv-
ing the Burcopel CAT, Gurtler dilutes it with water, and dis-
tributes and sells the product to its United States and inter-
national customers under its "Pulse Shield" trademark.

    FN1. Gurtler is an Illinois Corporation with an es-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

tablished place of business in Sought Holland, Illinois.

**\*2** Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington directly sold products to three customers in Delaware. Burlington had sales of $4,000.00 to one Delaware customer, $70.00 to a second Delaware customer, and $16,000.00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

### III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[ ]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.*, 544 F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Specifically, Gurtler must show that Burlington "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v.*

*Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.*, 542 F.Supp. 53, 55 (D.Del.1982), but Gurtler bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Burlington. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.*, 936 F.Supp. 177, 193 (D.Del.1996)).

### IV. DISCUSSION

#### A. Delaware's Long-Arm Statute

**\*3** The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Burlington. Burlington contends that the court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections (c)(1) and (c)(4) of the long-arm statute. The court will address each of these sections below.

##### 1. Delaware Long-Arm Statute § 3104(c)(1)

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. Del.Code Ann. tit. 10 § 3104(c)(1). Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

Delaware courts construe the long-arm statute broadly to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsection (c)(1) as a specific jurisdiction provision that requires a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsection (c)(1), Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993). However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware. *Boone,* 724 A.2d at 1156. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. (D.I. 52 ¶ 4). In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F.Supp.2d 268 (D.Del.2001).

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of Burcopel CAT. Gurtler further asserts that a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone,* 724 A.2d at 1160. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user. As such, subsection (c)(1) is not a basis for the exercise of jurisdiction over Burlington.

### 2. Delaware Long-Arm Statute § 3104(c)(4)

**\*4** Additionally, Gurtler asserts that Burlington has, within

the meaning of subsection (c)(4), availed itself of the general jurisdiction of Delaware. Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. Del.Code Ann. tit. 10 § 3104(c)(1). Gurtler contends that jurisdiction is proper under subsection (c)(4) because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

Delaware courts have interpreted § 3104(c)(4) as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F.Supp.2d 400, 405 (D.Del.2002); *Boone,* 724 A.2d at 1155 (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 727-28 (Del.Super.1996)) This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter,* 295 F.Supp.2d at 405.

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. A tortious act under § 3104(c)(4) is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc.,* 517 F.Supp. 1125, 1130 (D.Del.1981) Applying Delaware law, the court finds that the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler.

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. (D.I. 52 ¶ 2). Burlington has not appointed any agent for service of process in Delaware and is not registered to do business

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

in Delaware. (*Id*.) It has no local telephone listing, bank accounts, real estate or employees in Delaware. (*Id*.) It has not paid any taxes or franchise fees in Delaware. (*Id*.) It has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except for the current litigation. (*Id*.) The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. See *Motorola Inc. v. PC-Tel, 58 F.Supp.2d 349, 352 (D.Del.1999)* (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines, and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

\*5 Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. See *United States v. Consolidated Rail Corp., 674 F.Supp. 138, 144 (D.Del.1987)*. However, when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. *Bell Helicopter, 295 F.Supp.2d at 405*. In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues. (D.I. 53, at 2-3). In 2004, Burlington had sales to three customers in Delaware that totaled approximately $20,070.00. (*Id*. at 3.) While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales. (*Id*.) Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under § 3104(c)(4) of the

Delaware long-arm statute.

### B. Due Process

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the Due Process Clause. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.'" See *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)*. In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. See *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)*. In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. See *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)*.[FN2] Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." See *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed.Cir.1994)*.

> FN2. The United States Supreme Court has explained that:
> [t]he "substantial connection" ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. ... The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, ad-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

vertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*ICT Pharms., 147 F.Supp.2d at 272* (quoting *Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)*).

*6 Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield. (*Id* ) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship it directly to Gurtler's clients. (*Id* at 5). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped. Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola,* the defendant seeking to be dismissed, *i.e* Burlington, engaged a distributor, *i.e* Gurtler, who shipped the de-

fendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which was a critical factor in *Boone.* The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone, 724 A.2d at 1160.* As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately $66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone,* where the defendant earned $270,000 from sales of its product by its distributor in Delaware. *See id* at 1158.

*7 Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product was integrated into a variety of consumer products manufactured by well-known multinational corporations.[FN3] The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola, 58 F.Supp.2d at 352.* While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                            Page 6
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

> FN3. The *Motorola* defendant's product was a soft-modem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant derived its revenues "appear[ed] to be based upon the sale to *end users* of products containing its softmodems." *Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplate[d] sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets." *Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers had utilized the features of the defendant's support network. *Id.* In the present case, Burlington does not offer the same type of customer support network. According to Gurtler, Burlington maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola.* Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting

business in the state, but also it has derived substantial revenue from Delaware. The court disagrees. As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the Due Process Clause.FN4

> FN4. The court need not address whether jurisdiction in Delaware comports with the "minimum requirements inherent in the concept of 'fair play and substantial justice' " because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

*ORDER*

**\*8** For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.51) is GRANTED.

D.Del.,2005.
M & M Technologies, Inc. v. Gurtler Chemicals, Inc.
Not Reported in F.Supp.2d, 2005 WL 293509 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1182402 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant's Motion to Reconsider the Court's February 23, 2006 Order Denying Gurtler's Motions in Limine (Mar. 1, 2006) Original Image of this Document (PDF)
• 2006 WL 809084 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Gurtler Chemicals, Inc.'s Consolidated Motions in Limine (Feb. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 809083 (Trial Motion, Memorandum and Affidavit) Gurtler Chemicals, Inc.'s Opposition to Plaintiff's Motion in Limine Regarding Pulse Shield Profit Analysis (Feb. 3, 2006) Original Image of this Document (PDF)
• 1:03cv00994 (Docket) (Oct. 30, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2304181 (D Del.)
**(Cite as: Slip Copy)**

**C**
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Maty SENE, Plaintiff,
v.
MBNA AMERICA, INC., Defendant.
Sept. 20, 2005.

<u>Kester I.H. Crosse</u>, of Williams & Crosse, Wilmington, Delaware, <u>Tshaka H. Lafayette</u>, of Lafayette Law Group, P.C., Philadelphia, Pennsylvania, for Plaintiff, of counsel
Scott A. Hold, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Defendant.

*MEMORANDUM OPINION*
<u>FARNAN</u>, J.
**\*1** Pending before the Court is Defendant's Motion To Dismiss (D.I.4). For the reasons discussed, Defendant's motion will be granted.

### I. Background

On October 5, 2004, Plaintiff filed a complaint, alleging that Defendant, Plaintiff's former employer, engaged in racially discriminatory practices in violation of Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and the Delaware Discrimination Act. No summons was issued by the Clerk at that time. Plaintiff, after requesting a waiver of service and not receiving it, served a copy of the complaint on Defendant's custodian of records. A summons, which accompanied the complaint, contained neither the signature of the Clerk nor the seal of the Court. Defendant filed a Motion To Dismiss, and Plaintiff responded, recognizing February 3, 2005 to be the last day service could be effected under the 120-day rule of <u>Federal Rule of Civil Procedure 4(m)</u>. On February 8, 2005, Plaintiff served Defendant with a summons bearing the signature of the Clerk and the seal of the Court.

By its Motion, Defendant moves the Court to dismiss Plaintiff's complaint for lack of personal jurisdiction, insufficient service of process, and failure to serve the complaint and summons within 120 days. Because the 90-day limitations period of Title VII has expired, a dismissal by the

Court would be with prejudice.

### II. Parties Contentions

Defendant contends that the Court lacks personal jurisdiction over it due to a defective summons, that service of process on the custodian of records was insufficient, and that the time for serving the summons and complaint has passed and an extension should not be granted.

In response, Plaintiff contends that he had time to correct the defective summons, and therefore, he should be granted leave to amend the summons without service on Defendant. Plaintiff also contends that dismissal is not warranted, particularly in light of the statute of limitations imposed by Title VII and the fact that Defendant has not been prejudiced. Furthermore, Plaintiff requests that the Court declare the custodian of records to be a person authorized to receive service for Defendant.

### III. Discussion

#### A. *Whether process was sufficient so as to give the Court personal jurisdiction over Defendant*

<u>Federal Rule of Civil Procedure 4(a)</u> provides that the summons to be served on the defendant "shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff." <u>Fed. R. Civ. P. 4(a)</u>. Compliance with this rule is required to give a court personal jurisdiction over the defendant. <u>Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir.1996)</u> (holding the court did not have personal jurisdiction over the defendant because the summons did not contain the signature of the clerk or the seal of the court). Failure to comply is "fatal to the plaintiff's case. The parties cannot waive a void summons." *Id.*

**\*2** If the defendant raises the issue of the plaintiff's failure to comply with <u>Rule 4(a)</u> in a motion or a responsive pleading, the case should be dismissed under <u>Federal Rule of Civil Procedure 12(b)(2)</u>. *Ayres,* 99 F.3d at 569. When the issue is raised by the defendant, "it becomes unnecessary for the district courts to consider such questions as whether service was properly made, or whether an extension to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                    Page 2
Slip Copy, 2005 WL 2304181 (D Del )
**(Cite as: Slip Copy)**

120-day service period should be granted under *Rule 4(m)* "
*Id*

Plaintiff argues that Defendant was not actually prejudiced by the "minor, technical error" in the summons, and therefore, Plaintiff should be permitted to amend the summons without additional service on Defendant. (D I 8). The Court's lack of personal jurisdiction, however, is more than just a minor, technical error. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987).* "Requiring the Clerk to sign and issue the summons assures the defendant that the process is valid and enables the Clerk to collect whatever filing fees are required " *Ayres, 99 F.3d at 569.*

Additionally, the fact that Defendant had notice of the lawsuit is not helpful to Plaintiff's argument because notice is not enough to confer personal jurisdiction *Omni Capital Int'l, Ltd., 484 U .S. at 104; see also Ayres, 99 F.3d at 569.*

Based on the facts presented, the Court concludes that it lacks personal jurisdiction over Defendant Plaintiff served a summons on Defendant that contained neither the signature of the Clerk nor the seal of the Court, and the lack of signature and seal is fatal

B. *Whether the Court should grant Plaintiff an extension of time under Rule 4(m) to effect service of process*

Having concluded that the action should be dismissed for lack of personal jurisdiction, the Court need not "consider such questions as whether service was properly made, or whether an extension to the 120-day service period should be granted under *Rule 4(m).*" *Ayres, 99 F.3d at 569.* Although consideration may not be necessary, the Court will address Plaintiff's request for an extension

Rule 4(m) provides:
If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for

an appropriate period.

Fed. Civ. P. 4(m).

Thus, the determination of whether to extend time for service pursuant to *Rule 4(m)* is a two-part inquiry. First, a court must determine whether good cause exists for the plaintiff's failure to properly effect timely service. *Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1305 (3d Cir.1995).* If a court finds good cause, the court must grant an extension of time. *Id.* Second, if good cause is not shown, a court has discretion to grant the plaintiff an extension of time *Id*

*1. Whether Plaintiff has demonstrated good cause for his failure to effect timely service*

*3 Courts generally consider three factors in determining whether good cause exists: 1) whether the plaintiff has reasonably attempted to effect service; 2) whether the defendant is prejudiced by the absence of timely service; and 3) whether plaintiff moved for an extension of time for effecting service. *United States v. Nuttall, 122 F.R.D. 163, 166-67 (D.Del.1988)* (citations omitted). When evaluating good cause, courts should focus primarily on the plaintiff's reasons for not complying with the time limits of *Rule 4. MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir.1995).*

Although the Court finds that Defendant did not suffer undue prejudice as a result of Plaintiff's failure to comply with the service requirements of *Rule 4*, the Court concludes that Plaintiff has not demonstrated good cause. Plaintiff served Defendant with a summons that failed to contain the signature of the Clerk and the seal of the Court. In responding to Defendant's Motion to Dismiss, Plaintiff noted that he had until February 3, 2005, thirteen days from filing that response, to effect service. Rather than correcting the problem at that time, Plaintiff waited until February 8, 2005 to serve Defendant with a proper summons. Plaintiff did not at any time request an extension of the 120 days. Additionally, Plaintiff offers no reason for his failure to comply with the time limits of *Rule 4*.

Plaintiff did not make a reasonable attempt to effect service,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw.

Slip Copy                                                                Page 3
Slip Copy, 2005 WL 2304181 (D Del )
**(Cite as: Slip Copy)**

and Plaintiff did not move for an extension of time. The Court concludes that Plaintiff has not shown good cause for his failure to effect service within 120 days.

*2. Whether, in its discretion, the Court should grant Plaintiff an extension, despite the absence of a showing of good cause*

Because the Court has concluded that Plaintiff has not established good cause for failure to timely effect service, the Court will consider whether, in its discretion, Plaintiff should be granted an extension beyond the 120-day period provided by Rule 4(m). The Third Circuit has not provided an exhaustive list of factors district courts should consider when deciding whether to exercise discretion; however, the Third Circuit has advised district courts that the Advisory Committee Notes to the 1993 Amendments to Rule 4 provide some guidance. *Petrucelli,* 46 F.3d at 1305. One of the considerations that the Advisory Notes explain may justify an extension is if the applicable statute of limitations has run. FN1 Fed. R. Civ. P. 4 advisory committee's note. The running of the statute of limitations, however, does not require the Court to permit an extension. *Petrucelli,* 46 F.3d at 1306.

> FN1. Other factors courts may consider include: whether the defendant has evaded service; whether service was required to be made on multiple defendants; and whether the plaintiff is appearing pro se. Fed. R. Civ. P. 4 advisory committee's note. None of these factors is present here.

In *Farrace v. United States Department of Justice,* 220 F.R.D. 419, 422 (D.Del.2004), this Court, after considering all the circumstances presented, allowed an extension of time under Rule 4(m) to prevent the cause of action from being barred by the statute of limitations The Court, recognizing that it was not required to permit an extension, allowed the extension because the attorney, while trying to effect service, had a death in the family and problems with office staff *Id*

*4 The statute of limitations on Plaintiff's case has run; however, circumstances like those in *Farrace* are not present here. Plaintiff has offered no explanation for his fail-

ure to serve the summons, other than the defective summons contained a "minor, technical error" that could be corrected Plaintiff recognized in January that there was a problem with the summons and that he had a certain amount of time to effect service. Still, Plaintiff waited until February 8, 2005 to serve Defendant and did not request an extension of time prior to the deadline.

Courts have warned that plaintiffs should "[t]reat the 120 days with the respect reserved for a time bomb " *Petrucelli,* 46 F.3d at 1307 (citing *Braxton v. United States,* 817 F.2d 238, 241 (3d Cir.1987)) Plaintiff did not heed this warning. Thus, the Court concludes that an extension of time is not warranted.

### IV  Conclusion

Because the Court lacks personal jurisdiction over Defendant, Defendant's Motion To Dismiss will be granted, and this lawsuit will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). FN2 Additionally, Plaintiff will not be given an extension of time to effect proper service under Federal Rule of Civil Procedure 4(m).

> FN2. Because the Court concludes that it lacks personal jurisdiction over Defendant, the Court will not address Defendant's argument with regard to insufficiency of service of process.

An appropriate order will be entered.

### ORDER

At Wilmington this 20th day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant's Motion To Dismiss (D.I 4) is *GRANTED*

D.Del.,2005.
Sene v. MBNA America, Inc.
Slip Copy, 2005 WL 2304181 (D.Del.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2304181 (D.Del.)
**(Cite as: Slip Copy)**

Page 4

• 1:04CV01331 (Docket) (Oct. 05, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Suzanne M. Hill, hereby certify that on September 11, 2006, the attached documents were electronically filed with the United States District Court for the District of Delaware via CM/ECF (official Court electronic filing system) and two (2) true and correct copies were mailed via First Class Mail, Postage Prepaid to the following:

Ronald C. Grumbkow
32 Steeplechase Drive
Doylestown Hunt Estates
Doylestown, PA 18901

Robert K. Payson (#274)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
kshannon@potteranderson.com
shill@potteranderson.com

749676/30599